is on the docket this afternoon. 20-70021 Green v. Lumpkin. So, Mr. Kunin, whenever you're ready. Thank you, Judge Willett. May it please the Court. This is a case where a defendant's choice to be his own lawyer passed muster five times in state court, and yet the district court went back in time 20 years and found this defendant incompetent to have ever stood trial at all. We're going to ask this Court to reverse that. It might be helpful to lay out four independent ways it can do so. First would be that the district court got it wrong when it came to cause and prejudice. Second would be that Mr. Green can't prevail without new evidence that's barred by AEDPA. Third would be that AEDPA forecloses the possibility of second-guessing the state court determination that Green was competent. And fourth is that due process simply does not require a new trial. I welcome the Court's questions, but I can also take each of those in turn. The first point that I alluded to has to do with the district court's reasoning and analysis on procedural default, which it assumed Mr. Green's claims were procedurally defaulted, but then proceeded to de novo review after finding cause and prejudice to overcome what the district court considered procedurally defaulted claims. We submit that that was error because there was not cause and prejudice, but there are a couple of points to unpack in reaching that analysis. First, of course, would be addressing the district court's assumption that these claims were procedurally defaulted, particularly problematic when it comes to the question of Mr. Green's competency to stand trial in state court. Of course, if that claim had been adjudicated on the merits in state court, a lot of these rules that we're talking about wouldn't apply. Rather, the relitigation bar of AEDPA section 2254D would apply. And of course, there would be other restrictions as well, like the restriction of newly developed evidence under 2254E2. If it would be helpful, it might be worth pointing out that regardless of the position the district court took, we understand this court's precedent, particularly in the Ambant case of Langley v. Prince, to require an analysis of whether the claim was in fact adjudicated on the merits versus procedurally defaulted, because it's incumbent on the federal courts to not treat adjudicated claims as unadjudicated when they were. Putting that aside. All right. So you're saying on that point, you're saying that the competency claim, which the district court found was procedurally defaulted, is your position that no, in fact it was adjudicated? Is that what you're saying? So we think that that's a question that if the court were to consider in its obligation to just make sure that claims are actually being treated as unadjudicated when they're unadjudicated and adjudicated when they're adjudicated. I just wanted to flag that that is a question that would obviate the need to consider questions of procedural default. It would also obviate the need to consider 2254E1 deference, and it would obviate the need to consider 2254E2, because in Cullen v. Pinholster, the United States Supreme Court held that when assessing a state court's adjudication of a claim on the merits, the only record you look to is the record that was before the state court. Now, I think it's a question that it's sort of wrapped up in how the court views what is the essence of Mr. Green's competency claim as it was presented in state court. And as I alluded to in the opening of my argument, I've counted five different ways that Mr. Green's, if nothing else, competency to waive counsel and be his own lawyer over the course of a multi-day trial subsumes at the state of the law of the time, a lower threshold of competency to stand trial, right? So it was not until 2008 in Indiana v. Edwards that I think that the United States Supreme Court indicated that if a state wanted to, it could conduct a more searching inquiry where a defendant might be competent to stand trial, but they might need counsel provided for them in order for there to be a fair trial. Now, Mr. Green's trial was eight years before that holding. And as this court has held in the cases involving Scott Panetti, that at the time of Mr. Green's trial, the state of the law was that the right to self-representation was absolute, even if exercised by a seriously mentally ill individual. So I think there's certainly some concern that at the state of the law at the time when Mr. Green's proceedings were playing out in state court, there was, the way that Mr. Green's competency was handled and to the extent it's wrapped up in his choice to represent himself, that was a question that has been litigated in state court. There's no way for Mr. Green to get around the reality that the state courts have taken multiple looks at whether it was error to let him represent himself. And it has passed that test every time on direct appeal, in the state habeas trial court, and also, of course, when the CCA on state habeas ultimately decided to deny state habeas relief. The point about cause, though, especially on that claim, is one that the district court found wrapped up in this concept of abandonment, attorney abandonment. The cases, I think, that are most helpful in understanding that would be at the top level of the umbrella, Coleman v. Thompson, which establishes the baseline rule that ordinarily you cannot blame your state habeas lawyers in order to obtain de novo relief in federal court. That's sort of the top level rule. The Supreme Court has recognized some very limited exceptions to that. So one notable one would be the rule of Martinez and Trevino. But, of course, as the Supreme Court later held in Davila, it sort of meant what it said, when the general rule is the general rule. And if it looks like a defendant is blaming their state habeas counsel, the sort of the safest, surest approach is to adhere to that rule of Coleman v. Thompson. We've made arguments as well for why the things that Mr. Green is complaining about in terms of abandonment don't constitute abandonment under this court's precedent. Certainly the easiest way to handle the abandonment question would be to look at cases like the Ibarra case or the Wilkins case and to simply hold that even if there is a complaint about professional misconduct or gross negligence by a state habeas lawyer, when the lawyer files a timely brief in the state habeas proceedings, that forecloses an argument of abandonment. I think the contrary rule tees up exactly what Justice Scalia warned about in his dissent in Maples, which was that to go beyond that into sort of the realm of constructive abandonment, now you're talking about, well, this performance was so bad or so egregious that it now exceeds ineffectiveness and now enters the realm of abandonment. That opens the doorway to swallow the rule of Coleman v. Thompson. What do you do with a situation where the attorney, it's not just a matter of negligence or omission, it's affirmatively taking the opposite view of what the client's interests would be? So, I think, the way I would think about that is I would start with the rule of cause and prejudice, which is, is it something that caused a failure to comply with the state's procedural rules? So it's really a two-in-one question, because if there is some doings of state habeas counsel, eventually during the course of a state habeas proceeding, which can go on for quite some time, and there's no strict time limit for how long the CCA can wait or the state habeas court can wait before it makes findings of facts and conclusions of law, so that you could be talking about a very lengthy period. I think that would be a really troubling rule if the standard were, I think what Mr. Green suggests is that at any point during that there is some question about what state habeas counsel did and it's being adverse to his interests. It's not really, the timing doesn't work up, because I think as Mr. Green concedes, or must concede, that the time for pressing, raising, and supplementing the state habeas proceedings had expired in November 2001, and the event that is complained of, there's a complaint of a misstatement about the record in 2008, will certainly be a configuration to shut down. Here's what the federal court would say. You would not have and I would not have put this right. You wouldn't have put this right. These are not in the context of procedural default. No. And it's an important distinction. Because of course as Coleman v. Thompson teaches, the principle of procedural default makes sure that federal courts are not doing something that they couldn't do directly, which is order the state to retry a defendant when there is an adequate and independent state ground barring relief. And here we would have an example of that. So even if, I believe the separate rules for the timeliness of a federal habeas petition. Now of course the federal courts have so much more leeway when it comes to policing their own procedural rules. And a court in its equitable discretion can recognize circumstances that would suggest equitable tolling might be appropriate. But I think it's... Your point is it's not, Thomas, it's not a cause case. It's not a procedural default case. Right. It's not a procedural default case. I think there are important distinctions between procedural default that kind of get lost in some of these habeas cases sometimes. Because there was a time when the driving factor in habeas litigation was do whatever it takes to show that your claim was not procedurally defaulted. Now it's flipped. The petitioners have every incentive to try to show that their claim is procedurally defaulted to try to show some way to overcome the procedural default and trigger de novo review. And I think that's partially a product of 20 or so years of Supreme Court precedent deferring so heavily to the adjudications of state courts. So it traces back to that importance of drawing a distinction between cause and the actual timing of the event. And as my 28J letter response indicated, I think the, if I recall correctly, the flaw in that case had to do with a lawyer who intentionally blew past the deadline for filing a federal habeas petition and did so without telling the client, which seems different in a way than making a statement about some records seven years after they would have been of use to the relevant state habeas proceedings. But of course, even the district court found, and tell me if, I don't think the state disputes it, but correct me if I'm wrong, the district court found that McLean, the state habeas counsel, didn't file any cognizable claims, not just ones that, that, you know, that were green might have preferred, but didn't file any cognizable claims and then sort of cut off contact for about six years. Is that correct? As far as, I want to make sure I understand the question. If we're referring to what the district court found versus in this court's de novo review of cause and prejudice, what's the right thing? The district court found and whether you dispute that finding. I, I think I have to dispute, I have to dispute the finding for a couple of reasons. If the court will indulge, I'd like to unpack them because there are a couple of reasons. One, and I alluded to this in the 28 day response as well, it does beg the question, right? If we're faulting Mr. McLean for not filing cognizable habeas claims, if we're right, if the state's right, Mr. McLean's claims were not cognizable because in part this complaint about his competency to stand trial had already been taken care of on direct appeal. Now that's a separate, well-established, adequate and state ground that regularly bars claimants from pursuing federal habeas relief in federal court. Now, of course, the other question is what does the state habeas pleading look like? One of the claims, I believe it's the first claim, does talk about Mr. Green's, again, challenging, was it error to let Mr. Green represent himself? And when the state bounced that claim as being not cognizable, it made the alternative finding that it was not error to allow self-representation. And in the precedent the court applied under Texas law, maybe other states do it differently. But one of the factors is whether it was a competent, I'll read it out, it was competent, knowing, intelligent, and voluntary decision to proceed pro se. So I think on this record, there's far less of a concern about what state habeas counsel did. Now, the third thing I'd say is that Mr. McLean really can't defend himself against these charges because he died in 2009, or 2008. He did have replacement counsel. Danny Easterling replaced Mr. McLean. As far as I can tell, Mr. Easterling is still alive, and he served as counsel for something like three or four years in state habeas proceedings before the state court ultimately ruled. So I think the district court took one view of Mr. McLean without really engaging with the fact that Mr. Green, unlike in Maples, unlike in maybe some of these other examples we might be talking about, did have counsel throughout state habeas proceedings. Active counsel, or they would say counsel maybe in name only. And the court would be referring to Mr. Easterling, Judge Willett? I just want to make sure I'm understanding correctly. Well, we'll hear from them, but I think they might refer not only to Easterling, but McLean as well. And we'll hear from them later. They may well point to both as counsel in name only, not really breaking much of a sweat. Well, I'll say this about counsel in name only. That line of argument's inconsistent with the posture of habeas review because it's always the petitioner's burden to make the record that they need to show entitlement to relief, cause and prejudice. It's always on the petitioner. And that's pre-EDBA. Congress just built on an existing foundation of restrictions on federal habeas power. When we're talking about an accusation that somebody was counsel in name only, it kind of sounds like you're complaining about attorney negligence. If it's a problem in state habeas proceedings that's so obvious, but you're saying your lawyer did nothing, was counsel in name only, but you're not making a record of why they did something, you're complaining more or less about attorney negligence. And that's Coleman versus Thompson again. Because the Supreme Court has indicated that you cannot use attorney negligence to overcome a claim other than in the very, very narrow sense of Martinez and Trevino. Your point is the attorney basically has to be nonexistent. It's not good enough to be so bad that you're better off not having them. You have to literally not have them. That's right. And we go even further than that because we do think that Mr. McLean, there was a time when the district court, before it reconsidered itself, took a much different view of Mr. McLean's performance and indicated that looking at the record as we contend, looking at the record as state habeas counsel does, it really forecloses these claims in a way that was going to be amenable to challenge. So describe the line for me in the state's view between negligence and abandonment. I'm not quite sure it's clear. So we're willing to accept the line this court has already drawn in Ibarra and Wilkins, right? So when there is a timely filing in the state habeas proceedings, that forecloses abandonment. And we don't think we're writing on a blank slate, so I don't know how appropriate it would be. No matter the content of the filing. Right. I mean, I think that's the rule that avoids the trap that Justice Scalia warned about falling into. Is it really true that McLean only filed a putatively bare-bones habeas application in October 2001? Did he really do nothing? He didn't do nothing. And he also, reading what he did file with the state courts, it's obvious that he looked at the state habeas record. I mean, obviously, not the state habeas record, but he looked at the trial record to that point. And one of the things that we do when we're analyzing state habeas performance is you look at it objectively, reasonably. There are going to be claims where looking at the trial record, a good appellate lawyer is going to decide these are not claims I can realistically pursue. And that's also tied up into the question of what was the state of the law at the time? Because as we say, this is a record where Mr. Greene's competency to stand trial had already been established, establishes that because there was cause, therefore, by definition, there was a failure, no failure to develop the factual basis of the claim. So we don't think that's the best reading of Barrientos. It seems like it's the conditional in this case, what Mr. Barrientos had done. Mr. Barrientos was diligent in pursuing his factual record in a way that Mr. Greene was not. I want to highlight one very important difference. Mr. Greene represented himself at trial. The evidence that the district court relied on specifically to second guess the contemporaneous competency evaluation of Dr. Rabenzer from 2000 was newly developed evidence in state court. The failure to develop that evidence falls squarely on the defense because Mr. Greene was counsel at the time. There's nothing external to the defense, nothing that can't be attributed to the defense that caused the failure to develop that evidence in state court. Now I assume that my friend across the bar will argue that Mr. Greene shouldn't be held responsible for his failure to challenge Dr. Rabenzer's competency evaluation, shouldn't be held responsible for those failures because he was incompetent or should have been found incompetent. But that's like a chicken and you can't make that finding without the new evidence. On top of that, this court held in Gonzalez versus Davis case we talked about in our reply brief, I think it's a 2019 case, that somebody's incompetence cannot be used to show a failure to comply with a procedural rule because it's not external to the defense. So those are some factors that are at play here that are not at play in Barrientos case. I know the state resists the counsel and name only label but does the state in fact sort of reject the district court's finding, they phrased it this way, that Easterling, talking about Easterling now, never quote took any action in relation to it. Not really. I guess the question is what is the consequence of that failure, right? I think that's the point of the dispute and for kind of the reasons I've... I think that in turn is what led to the district court then kind of describing that sort of lack of activity as counsel and name only. Well, you know, at the same time, Mr. Greene had the opportunity for this federal evidentiary hearing but did not put on testimony from Mr. Easterling. Of course, we couldn't have heard from Mr. McClain because he had died and it's the sort of scenario where this is not the kind of record that's going to show cause and prejudice. But of course, even if we're completely wrong about that, there's still section 2254e1 of EDPA and the factual deference and the way there's just really no fair way to read this record without concluding that at some point in state court, Mr. Greene had been determined to be competent to stand trial, right? So we could look at ROA 5359, the Feretta hearing, that there was no... I find he has no mental illness that you can represent yourself. There's, of course, this competency evaluation that was done by Dr. Rubenzer that finds him competent to stand trial. The states have tremendous leeway when it comes to handling competency to stand trial. The U.S. Supreme Court has refused to constitutionalize a due process standard for either the extent of an expert's evaluation of competency pre-trial, refused to constitutionalize the way that the state trial court in handling its own courtroom makes that determination that the defendant is competent to stand trial. I think on this record, it transpired at trial the way that the competency was treated in multiple Feretta hearings with an expert evaluation. You've got direct appeal, state habeas, trial court findings, as well as the CCA. On this record, this is not an example of a case where even if everything else I've said today is wrong, that the due process has ever required more than what Mr. Greene was put through before the courts let him be his own lawyer. Actually, not just communicate with counsel, not just understand what was going on, but to conduct jury selection, call witnesses, cross-examine witnesses, interact with the judge for several days, make jury arguments. These are all things that far exceed what a defendant's ever been required under due process to stand trial. So we'd ask the court to reverse. Thank you. You've saved, I think, five minutes for rebuttal. All right, we'll now hear from counsel for the appellee. We're not going to divide time, or is it only you arguing? Only myself. Okay. Whenever you're ready. James Ritting for Petitioner Travis Dwight Greene. First, I want to address the state's attempt to push this case into the area of 2254-D1 and 2254-D2, which has to do with the claims that were adjudicated in state court. And there's an easy way to tell whether they were adjudicated in state court. You look to see whether they were raised by anybody in state court. And in this case, competency to stand trial was not raised. It was not raised on direct appeal, and it was not raised in state habeas. I thought the argument was that the competency to stand trial is subsumed in the higher finding that he was competent to represent himself, which was adjudicated. That was the claim. But the fact is there are two distinct causes of action. One is a FARETA claim, and one is a competency to stand trial claim, in which the DUSCIE standards are featured. The DUSCIE standards aren't featured in every FARETA hearing. And you do not have to reach the issue of competency to stand trial. That's the holding in Godinez v. Moran, where they said, not the holding, but that is what the court said in Godinez v. Moran. You do not always have to have a competency finding in order to have a FARETA determination. So it's just absolutely false that there was a determination, a legal determination of competency to stand trial in state proceedings in this case. You're saying that a FARETA hearing can never, by extension or by definition, address the competency to stand trial, or that it doesn't necessarily address it, and it just didn't in this case? It doesn't necessarily address it. So why didn't it in this case? Because there was no, because no one raised the issue of competency to stand trial. That's one. I know, that's circular. I'm saying, I understand that no one raised that by name. I'm saying that there was a FARETA hearing. You just told me that it doesn't mean a FARETA hearing doesn't necessarily address competency, and it didn't in this case. And I'm just asking, okay, why didn't the FARETA hearing in this case also address the issues that are relevant to competency to stand trial? Well, first, and I was trying to explain it, first, no one raised it. Second, the court itself didn't correspond to go into anything like competency to stand trial criteria. There is no discussion, for example, of the dusky factors on the record in this case, zero. So there wasn't, and as a court can make a determination that someone is a FARETA competent without doing that. That's allowed, and that's what happened. And the only thing that you can infer anyway, if there was from a FARETA hearing, would be that there was a factual finding of competency, not that there was a legal determination. You don't look to FARETA, and no one ever has, and said, okay, because there was a FARETA hearing, there was a legal determination of competency. All that anyone has ever suggested, mainly the respondent, is that if you have a FARETA hearing, then you have a finding, a finding of fact, not a legal determination. Wouldn't we have to defer to that finding of fact if there were such a finding? Clearly, if there were such a finding, this court would have to defer to it. There's no question about that, but the evidence in the record shows that there was no such finding, and the district court made a careful analysis of the record and said that there was no finding of competency in this case, and the reason why is certainly, and certainly not competency to stand trial at the time of trial. There was a FARETA hearing, and only one FARETA hearing that came to a conclusion that he was competent to waive counsel, that he could voluntarily waive counsel, and that was the last one, I believe, in September 14th. There wasn't a clear conclusion in the first Mr. hearing to Mr. Travis Green to go forward. After that, the only, there was no other determination that he could even waive. At trial, all the court did was receive into evidence, not even into evidence, it just received and did some bookkeeping, the expert report. There's no evidence he even reviewed it. There is no colloquy with Green or his counsel about waiver or about permission. I would like to turn to the second issue of importance in this case, and that is the fact that the district court found clear and convincing evidence that Mr. Green was incompetent to stand trial, so even if there was a competency file. Don't we have to talk, don't we have to talk about whether there was, I mean, so if there was never a competency finding because it wasn't raised, then it's defaulted. The claim is defaulted, right? If there, yes, that competency. Okay, so if it's defaulted, then we have to talk about whether there's cause and prejudice to overcome the default. That is correct. And so I thought that the next argument as well, the finding of cause was based on the supposed abandonment of Mr. Green by his attorney. That's not right, and I can address that in some of the issues. Well, Maples is the case, and I've read it, and it says it's limited to the extraordinary circumstances, which are nothing like the circumstances here. So what's your best case for applying Maples to a circumstance here, like this one? The reason that the court found abandonment in Maples is because the attorney-client relationship, that agency relationship, was severed. Yeah, but the facts in that case were the two guys at a private law firm left the firm. That's correct. That's correct. The attorneys that were supposed to handle the case, that were assigned to handle the case, and who had appeared in the case, had left the firms, but he also had local counsel. John Burnett, I believe, was his name, or John Butler was his name. He was counsel of record. He was local counsel, and if anything, should be watching things like timing issues. Okay, so he had counsel. Here, McLean, the state habeas counsel, in October 2001, filed a habeas application. So do you have any case, and it didn't raise the competency issue, so do you have a case that finds Maples' abandonment where the lawyer actually did not have been adequate? It may have not raised the right claims, but do you have an abandonment case that would apply to that situation? We don't have a situation in which a court has held at Maples, under Maples, that a case in which a habeas application was filed was abandonment. In this case, though, whether there was a cognizable claim is a matter of state law, and the CCA found that, based on the findings that were submitted, that this claim was raised already in, all the claims that were written about, in any sense, had been raised on direct appeal. They weren't cognizable. It's a matter of state law. So, too, the other claims, which included Brady's claim, which were just bare bones. There was just a heading in a promise to investigate later. Those weren't cognizable, either. There was no argument, and there was no facts. You're saying it was a poorly lawyered petition. I'm saying that the district court found, what the district court found was that Mr. McClain did not, was not working for his client's interest when he filed, at the time he filed that application. In October 2001, that application? That application. What does that mean, wasn't acting in his client's interest? I mean, he filed a habeas application. It may have been bad. It was not just bad. In any other profession, doing something like this would be a fraud, because he then went and- Were any of the claims raised adjudicated on the merits by the Texas courts in habeas? They, yes, the claims were adjudicated. Okay, so no matter how bad it was, some of the claims were actually ruled on, on the merits. Yeah, in the alternative. They were based just on the findings. It just said, we adopt the findings of fact of the trial court. And among those things that were said about each of the claims that it, that were written about, was that they were default, was that basically they were already raised in, on direct appeal and couldn't be reached. Is your point that that poor filing, let's just stipulate your, your theory, that it was just a terrible filing. Is your theory that that act of filing was an act of abandonment? My theory is that that finding was not in the interest of Mr. Green. Now, I'm happy to stipulate to that for purposes of conversation, but to me, abandonment is very different from poor lawyering. I assume you'd agree with that. I certainly do agree with that. Abandonment is when you're not a lawyer at all. You're like, you, you've left the case, you've left the firm as in Maples. When did, I presume there's a date at which abandonment takes place. When did abandonment take place here in your view? The district court's conclusion was that abandonment occurred before he filed that writ. And the reason why is the court looked... Does that make sense? Yes, because... How do you abandon a case and then come back to it? I thought you abandoned it. The district court looked what the, what the, what Mr. McClain did later. They looked at the fact that not only did he, he went on not only while the case was still, still alive, to repudiate every claim in that writ and to say that he could not in good faith ask for relief from the death penalty. At the same time, he suppressed evidence, suppressed evidence that showed his client was mentally ill and potentially mentally incompetent at trial. Knowingly... That was in 2008. That's correct. Right. We're talking about the filing of a habeas application seven years before that. That is correct. As this court knows, triers of fact can look at later actions and make determinations about what the intent of a defendant was at an earlier time. They can look at later actions and say, well, based on that, it's now clear that what was going on earlier in 2004 was the beginning of a conspiracy. To Judge Ho's question, so try to isolate as best you can the point, kind of the fateful tipping point at which McLean went from negligent to abandon. When did he go from mere negligence to abandonment? The district court found that he didn't go from negligence to abandonment. He went, he abandoned Green from the start. He had no intention of representing... Does that make any sense? I do believe on the record... Just as I forget, just as a commonsensical matter, it seems to me that there are two theories that you can put forth. One is abandonment. And one is, I think you're basically alleging a theory of attorney sabotage, right? Which I would think would be another formulation of ineffectiveness. To me, those are two antithetical theories. You have not abandoned your case if you are very much representing your client. You're doing it in a way that is antithetical to the client's interests, but you haven't abandoned the case. Why not just proceed under an ineffectiveness theory? That way we can talk about ineffectiveness. But to me, it's just, that's the bucket to be in, not abandonment. And indeed, we have proceeded on an effective... No, I understand. Okay, so... Not with respect to the first claim, for the fourth claim for relief, which is actual incompetence. But when we're talking about the very important IAC claims, we are proceeding on the fact that what the defendant, what Mr. McClain did, certainly was ineffective assistance at the state habeas level, justifying the court. And that was the cause for the default of the IAC claims. So we're certainly, with respect to the IAC claims, claiming that. And there can be no question that Mr. McClain provided ineffective assistance of state habeas counsel. All right, well, if you want to move to that claim, that's the IATC claim for failing to seek a continuance is claim one. That's, I guess, McClain, district court found McClain was ineffective for not recognizing Moncrief, was that his attorney? Lack of investigation and preparation of a mitigation case. So this has to do with Moncrief, well, the claim not raising the issue of Moncrief's failing to seek a continuance. That's right, that's the claim one. We need to find cause, that would establish cause, if he were successful in that, that would establish cause under Martinez. Correct. Okay, so my question is, is that McClain is looking at the record, wouldn't he have seen that the trial court warned Green repeatedly that it would not grant continuances or adjournments to allow more time to prepare? Well, first, those were directed at Green, they were not directed at Mr. Moncrief. Moncrief was the standby counsel? He was the standby counsel. Green was representing himself. That's correct, so those were directed at Green, those comments were directed at Green. All right, but they reflect the trial judge's disposition towards any continuance motion, no matter who was filing it. In other words, isn't it a reasonable call to say, you know what, let's just not annoy the judge any further, this is not going to work? Well, you have to have a strategic reason for that. Yeah, the judge just said don't ask for any more continuances. But that, and if you need a continuance, well, there's two, first there's two issues. One, he needed to ask for a competency hearing, and there's no discretion. Oh, I was just talking about continuance. But if we're just talking about the continuance, Moncrief realized that he needed a psychiatrist or a psychologist. He realized, and he says so on the record, and his closing argument is, this man is sick, but I have not been able to bring you the psychological evidence. So he knew from the start he needed a psychologist, and that he needed a, he also needed to develop other mitigating evidence. He did, his mitigation evidence case was, he didn't have any time to present one, and it was perfunctory. So he realized that he was in this position, and he also said at the hearing, I should have asked for a continuance. He understood himself and admitted that he should have asked. Did he testify also that he didn't think the court would grant one, a continuance, if he asked for it? He was not sure that the court would ask for one, but it was, but it is still incumbent upon him to do so, and when you make a determination about what this court would do, the standard should be is, under Strickland, is what would a reasonable, fair-minded jurist do in this situation if it was brought to his attention that my client has very serious mental problems, I cannot discuss the case with him, I need a psychological expert, I haven't had time to interview the family members, and all of that has been, we should, you should take into account, has been done because the trial court took a very restrictive and unnecessary view of what standby counsel could do. 16 years earlier, in, I believe it's McCaskill, the court made clear that the right to represent yourself is a trial, basically a trial right, and that standby counsel can have all sorts of leeway to do administrative actions, to help with subpoenas, to interview witnesses, so long as it's not in front of the jury. But Moncrief was prevented from doing it, and he knew it. So the question is, what would a reasonable judge under these circumstances do when he was asked for a continuance? He was asked for a continuance. When Moncrief expressed concerns to the trial judges, I understand that, look, if Mr. Green decides not to represent himself, I don't have the expert witnesses for mitigation, and the court told Moncrief at page 5967 of the record, excuse me, Mr. Moncrief, I have admonished Mr. Green time and time again about this. He has put himself in the position that he does not have all the tools that are available. He did that knowingly, intelligently, after having had several hours of conversation with the court on the record about the difficulties of representing oneself. So in light of comments like that from the court, why wouldn't Moncrief have been reasonable in thinking, if I ask for a continuance, the judge is not going to grant it? The reason that it's unreasonable is he has an obligation as an attorney to defend his client and to put on a death penalty case, and he knew that he could not. So even if he thought the chances were against him, he still has to make the record. He still has to go before the court and ask for a continuance. What's going on right here is people are second guessing. Is that kind of like a nothing to lose? Well, you didn't have anything to lose, so you should have asked for a continuance. No, it wasn't. That's not a nothing to lose. The assumption is that this judge would not have granted the continuance based on Greene's act, the way that Greene behaved, not on the way Moncrief behaved, on the way that Greene behaved, that he would punish Greene, even though Moncrief could bring to his attention his horrible problems that he was having communicating with his client. Facts that the district court— Am I right? Greene had been allowed to represent himself. That's correct. After the Ferretta hearing, after the colloquy with the court, the court had made clear, look, you're taking this representation, you're taking the risk of representing yourself, Greene. That was all out there. Yes, but there's been clear and convincing evidence that Greene was incompetent at trial, that he was suffering from a severe mental illness, that he could not communicate effectively with his counsel. Those are based on detailed findings of fact, on expert testimony, on testimony from witnesses, and Moncrief had not brought to the court's attention the experience he was having with his counsel. So you have to ask, what would a judge do? Let's just stipulate, since you clearly feel strongly that this was defendant for not asking for continuance. If he had asked for continuance, what evidence do you have that the judge would have granted it? What evidence do I have that the judge would have granted it? Well, it's— Don't you have to show prejudice? Don't you have to show that the deficient performance actually prejudiced Mr. Greene? Yes, and that analysis is what—are you talking about what type of evidence could Mr. Greene have put on if he had been given a hearing? I think you're saying that it was unconstitutionally ineffective for Moncrief to have failed to ask for continuance. That's correct. Let's just stipulate that you're right. That was a terrible lawyer decision. Is there any evidence that the judge would have granted the continuance had it been requested? Well, the—as I say, the analysis isn't, you know, is there evidence that the judge would have granted it? That is not the proper analysis. The proper analysis really is, are there grounds for it? Would it have been an abuse of discretion if he did not? Did he have—if he did not do this, given the circumstances at Moncrief? Pardon me. I thought this was a theory of attorney ineffectiveness. Yes, Your Honor. Right? And so you have to prove under Strickland the deficiency, and you have to prove prejudice. Yes. Right? The attorney was not only unconstitutionally awful, but that that awfulness actually caused your client harm. That's correct. If the notion is Green was harmed by the unconstitutionally awful decision not to ask for continuance, I presume the harm is because he would have gotten a continuance. There's two levels of harm. One is he would have—that there is—it's reasonably probable that he would have received a continuance. And the other— You see why it's difficult? Because we're faced with all this language from the Court indicating that the Court was probably not going to grant a continuance, and if any, they might have even sanctioned you for asking. I don't mean to overstate it, but the point is it's hard for me to see the evidence that this, I'll just stipulate, unconstitutionally awful decision not to ask for continuance meant anything, given that the judge was going to deny any such motion anyway. Those decisions were made against the background of a certain amount of knowledge about Green, right? Those were made against the background of what the Court perceived about Green at the time. Is your point that the judge wouldn't have heard a continuance from Green but might have heard it from Moncrief? That's right. If Moncrief had brought to the judge's attention why he needed a continuance—and, of course, that's part of it. You just don't stand up and say, I want a continuance. You say, Judge, this is why I have to have a continuance. The premise of that argument appears to be that the judge just didn't know all the problems that Green was having mentally. That is correct. Okay. Is it not true, though, that the Court did order a competency evaluation out of an at Moncrief's request? Yes, the Court did, and that competency evaluation was done on—ordered and performed before trial, and the competency—and it was not evaluated by— Well, so—and the Court got a competency evaluation, right? That's correct. It got a competency evaluation. Which said he was competent to stand trial. It did receive that. The Court didn't evaluate that competency. What does that mean? It received it but didn't evaluate it? There's no evidence in the record, and as the District Court found—and this is a finding of the District Court—that the Court didn't do anything with the report. It didn't stop and say, I'm going to read the report. It just received it. And if you look at the record, the trial record, all that happens is he asked—he didn't even have a copy of the report. He asked the prosecutor, he got a copy of the report, he takes it, there's no indication that he stopped and read it or asked— You're saying there's a finding from the Federal District Court here that when the trial judge got the competency evaluation, he didn't read it? Based on the record. Like he didn't read it? Based squarely on the record, because there is no—he didn't stop, he didn't ask anybody— Not back in chambers, not later that night, not the next day, he just didn't read it? No, there's no— The Federal District Court found that? There's speculation that, you know, he had another report, maybe he read it, maybe he sat down and studied the DSMV— I mean, is there testimony from the judge, you know what, I got the competency report and I just didn't feel like reading it? What we have is the record and what the District Court made based on the record. Yeah, what is the basis for such a finding? I didn't— The record. Received it, but I didn't— The record, because— What in the record is the— Because if you have a case like—take a case like Austin v. Davis, where the court does take a—does have a hearing, it's related to Feretta, but also considers the issue of competency to stand trial. There is a notation in the record that I have received the report of so-and-so. I have looked at this report and I have read it. I find that it was, you know, a thorough report. Those type of comments are common, that judges make sure that that's done. In this case, there's nothing of the sort. It's just, thanks for the report, let's go on, we'll make this part of the appellate record. That is basically what happened. The record shows that the court ordered the competency hearing? That's correct. It does show that it ordered the competency hearing. Okay, but just to be clear, the deficiency theory here is not that the judge did a bad job, but that the lawyer did a bad job, right? Right. I think Judge Duncan's point is the fact that the judge had—I think this is the Rubenzer report, right? The judge went out of his way to—I assume it's he granted this or requested this evaluation. Maybe he read it, maybe he didn't. Maybe he was dutiful, maybe he was flagrant. I don't know. But the point is, you're saying the attorney was deficient for not asking the judge to do that again? You see the difficulty? Well, no, I don't see the difficulty. For one thing, Moncrief knew that Rubenzer did not have an account of what happened at the time, so he had a limited amount of information about his experience with Greene. If you look at the testimony of Mr. Moncrief that the district court found credible, he goes through and says, for example, trying to talk to Greene about legal concepts was like trying to teach a mentally retarded child. It's like chemistry. It was that bad. He had no way—he couldn't pay attention. His speech went from pressured. It went from pressured to mood swings where he had no affect. He was talking to himself in trial and trying to disrobe. None of this information was had by Rubenzer. And when Dr. Rubenzer was questioned about this information, you can look at his report. It's ROA 1437, all the way down to 1498. He said that Moncrief's description of his interaction with Greene, if accurate, indicates that Greene was psychotic at trial. He also admitted that when he did his report, it wasn't—he didn't follow his own recommendations that he later published. He also said that he didn't—one of the things he may have missed was that when he was given Greene's claim that he'd mistrusted lawyers, he dismissed that as sort of a normal mistrust, but he said, I didn't inquire to see if he had a psychotic explanation for it. And so on. So Moncrief knew that he did not have the information that he needed to make a correct determination about his client's problems. They—then— If I may, let me just sort of isolate this, though, because we're kind of all over the place in this case. Not your fault. It's a complex case. But to my mind, there is a troubling competency issue here. I will absolutely give that to you. And so if you want to talk about the competency of the claim, we could talk about that. You've got that problem of abandonment. But I think we're right now talking about the ineffectiveness claim. Yes, we're talking about— And that's a very different problem for you because here, you've got an attorney who's facing a judge who's already done a lot on both the continuance issue and the competency issue. To me, a lawyer can make the calculated decision rather than essentially asking for rehearing in front of the judge to pursue other avenues of relief. That's not an unreasonable strategic call, is it? I see the yellow light is on. And may I just make one other—I think it's important to look not only at the first claim, the first claim, which is the IAC claim for not putting a mitigation evidence, but also at the fifth claim, which is ineffectiveness for not asking for a competency hearing. There, there is no discretion. Moncrief clearly had a reason to doubt his client's competency. He says he did, and he describes why. I thought the issue was, was McLean ineffective for not raising this claim on— Well, also for not raising the fifth claim. I thought that was claim five. He certainly is. Any reasonable habeas attorney has to go talk to the trial attorney. He has to get that— Right, but the question is, was McLean deficient— That's correct. —for not raising the claim in light of what had happened at trial with respect to competency? He's deficient to the extent that he did not make a reasonable strategic decision, and strategic decisions have to be based on reasonable investigation. And he conducted no investigation into the claim that could passively be considered reasonable. If you compare this to the case such as Williams v. Smith, there the attorney got records, got records from, I think, the Baltimore Public Service Department, but he did not get other important records that show that his client was abused. And the district court found not only that it was ineffective, but that the state court was clearly erroneous in finding that it was not ineffective. So in this case, it is obvious that there was no investigation of competency of someone who the trial attorney said on the record was sick and that he needed a psychiatrist to properly present mitigating evidence. You have to go to that attorney and ask why, and McLean did not do anything of the sort as the district court found. So ineffectiveness of state habeas counsel is an easy one, especially since the standard is you only have to raise a substantial claim. Mr. Redding, thank you so much. Your red light is on. Thank you, Your Honor. Mr. Koonin, you've got five minutes for a rebuttal. Thank you, Judge Willett. I was kind of thinking, maybe I could try to tie together some of the parts of this case. I think you recognize there are a lot of intricate issues in this case. There's the competency question and then the two ineffective assistance of trial counsel claims. One has to do with Mr. Green's actual conviction itself, the other for the sentencing. I think one common thread that binds claims like that is the absence of a single comparable case from any jurisdiction advanced by either the district court or Mr. Green where a defendant was given the opportunity to defend himself as is his constitutional right, where those proceedings were second guessed in the way that they were here, let alone with an attendant finding that due process or the Sixth Amendment require going back in time years after the person had never been competent to stand trial at all, or that the lawyer performing this task, which I think the district court described as sort of a thankless 11th hour task where Mr. Green had placed an insurmountable roadblock on his ability to do more, essentially, to look at that kind of performance and find it so objectively unreasonable that not a single reasonable lawyer in this country, faced with the actual situation Mr. Moncrief was in, would have handled it so differently that you would require a new sentencing. I just thought with respect to the claim of Moncrief's ineffectiveness for failing to raise competency, what I thought we were talking about was whether there was cause to excuse the default of that claim. Is that right? That's one question. Under Martinez. Right. And so the issue there is, was McLean deficient as state habeas counsel for not raising that claim? There's two levels you have to address, sure. Yes. You'd have to first find that McLean was constitutionally ineffective. We think the record speaks for itself for much the same reasons that the district court recognized in its first iterations before granting relief, because there were multiple levels of this case that the district court eventually settled on granting relief on these IATC grounds, but in earlier versions had more or less, let's say, missed those claims. It seems an odd situation to say that a mistake is so obvious that no reasonable lawyer in state habeas would have missed it, and yet the district court missed it. Twice in one case. So when Martinez set a standard, it's a rule of objective reasonableness, not reasonableness for me, but not for thee. The way they look at it is based on the record and the choices that were in front of Mr. Moncrief. And I think the right way to look at a claim like the ones against Mr. Moncrief is not necessarily what should he have done, but like Richter and Cullen v. Penholster teach, to look at the objective situation and say, even if he was wrong in making the choices he made, was that mistake so objectively unreasonable that no one would have made it? And we don't think that's a conclusion you can reach on this record. I think we've discussed already the admonitions that continuance wouldn't be granted. You can look at, let's say, for example, ROA 6416, which is just before trial is about to kick off, and the jury is told by the judge that it was the judge's practice through mental health experts to make an inquiry into the individual's sanity and competency to stand trial and to make sure that the individual understands what is occurring and will occur and has the mental capability to make an informed decision on whether or not to represent themselves. That is what happened in this case. I tell you this so that you know that an individual does not just walk in and say, quote, I'm representing myself. This is not a record where you have to really do a lot of guesswork. And the suggestion that the judge just didn't look at the report, I don't think is borne out by the record. But there's something else that's missing in Mr. Green's argument and the district court's opinion, and that's the presumption of regularity that applies to state court proceedings that existed before AEDPA. Federal courts have always looked to the state courts, understanding state courts protect liberty, they protect the constitutional rights of people in front of them, and they follow the law. So the court should— I just have one quick question. With respect to the claim, not the ineffective assistance of counsel claims, but with respect to McLean's failure to petition on the competency issue, is the only argument for cause in the case that McLean abandoned it, abandoned the case, or is there also an argument that McLean was unconstitutionally ineffective in failing to brief competency? So it would have to be this abandonment theory, because in Davila, the U.S. Supreme Court said that you cannot use that Martinez-type argument to overcome procedural default of a claim that isn't an IATC claim. Until the U.S. Supreme Court says otherwise, I think that just has to be the law. And I want— Okay, pardon my ignorance. This is obviously a complicated area of law. You're saying the only way you can argue ineffectiveness as a basis for cause is when the Yes, that's right. But I want to point out, if the Court will indulge me, just one closing point. There was a discussion about the mistake in 2007 or 2008 versus 2001 and the timing there about how could that possibly be abandonment, that it happened before the filing of the proceeding. I think your instinct is right, Judge Hobart. Also point out that I think the relevant diagnosis for Mr. Green didn't happen until 2003 anyway. That would be sort of another way of looking at the cause issue in this case, right? We can't say that Mr. McLean abandoned him when he actually filed this habeas petition when so much of the record would have been available at the time of trial. I guess what's nagging at me is I get that he did not abandon—this does not sound to me like an abandonment case, just period. But what is bothering me is, is there an argument that his failure to—McLean's failure to pursue a competency claim, was that constitutionally ineffective? And was that a basis for finding cause? And you're telling me under Davila the Supreme Court's already foreclosed that theory? Our understanding of the Supreme Court president is that theory is foreclosed. But even if we can go down that road and look at objective reasonableness of it, right, the state of the law at that time in 2000 suggested that to the extent that Mr. Green's competency could have been attacked in state habeas, Mr. McLean handled that reasonably. You could look at the state habeas treatment of it in ROA 7686 and 7697. Mr. McLean took a run at competency by attacking the applicant's pro se motions to try to make an applicant's competent, knowing, and intelligent and voluntary decision to proceed pro se. So under the state of the law at the time, before Indiana v. Edward, I mean, that was a perfectly reasonable way of trying to deal with competency. And it's not objectively unreasonable. Thank you so much. That's the only case on our docket this afternoon. So we're grateful to counsel. These are—it's an arduous case, complex, and obviously consequential. Mr. Redding, you were court appointed, am I correct? Under the Criminal Justice Act. So the court is grateful for your representation. We appreciate it. And with that, we'll stand in recess.